UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EIRIK K. ROBERTSTAD; CHRISTINE L. LESTER,<br><br>*Plaintiffs*,<br><br>*v.*<br><br>PETER J. HENRY,<br><br>*Defendant*. | Civil No. 3:20-cv-1513 (JBA)<br><br>June 14, 2021 |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Plaintiffs Eirik Robertstad and Christine Lester bring this lawsuit for compensatory damages, punitive damages, and attorney fees and costs against Peter Henry, a social worker employed by the State of Connecticut. (Compl. [Doc. # 1].) Plaintiffs allege that Defendant improperly removed Robertstad's minor children and Lester's grandchildren, M.R. and E.R., from Lester's home "on or about September 10, 2020." (*Id.* ¶¶ 4, 7.) At the time of their removal, Plaintiff Lester was the minor children's licensed foster parent. (*Id.* ¶ 4.) Plaintiffs claim that this unilateral removal was contrary to law and amounted to intentional infliction of emotional distress and denial of substantive due process in violation of the Fourteenth Amendment. (*Id.* ¶¶ 9-10.) Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, articulating ten distinct reasons why dismissal is appropriate. (Mot. to Dismiss [Doc. # 35].)

**I. Background**

Plaintiff Robertstad alleges that he is the father of minor children M.R. and E.R., and Plaintiff Lester alleges that she is the paternal grandmother of the children.[1] (Compl. ¶ 4.)

---

[1] At oral argument, Plaintiffs ultimately conceded that the Court should not treat M.R. as a biological child or grandchild of theirs. Given the Parties' agreement, the Court will treat only E.R. as a biological relative of Plaintiffs.

Lester was granted custody of the minor children on September 30, 2019 by approval of the Connecticut Superior Court and was to retain custody "until such time as custody could be returned to the plaintiff Eirik Robertstad." (Compl. ¶ 6.) "On or about September 10, 2020," Defendant allegedly "seized the two minor children, removed them unilaterally from the custody of both plaintiffs, and placed them in foster care." (*Id.*) The removal of the children caused Plaintiffs "severe emotional distress." (*Id.* ¶ 9.)

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To determine whether an allegation is plausible, a court must accept all the factual allegations as true, while disregarding any conclusory allegations or mere recitals of legal elements. *Id.* at 663. Then the court must read all the well-pleaded allegations and conclude whether there are sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

"When considering a motion to dismiss [for lack of subject matter jurisdiction] pursuant to Rule 12(b)(1), the court must take all the facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

## III. Discussion

### A. Consideration of State Court Documents

Defendant requests that the Court take judicial notice of certain facts from the related state court proceedings involving Plaintiffs and the minor children, including that

Plaintiff Robertstad was arrested and charged on September 10, 2020 with two counts of risk of injury to the minor children and, as a result, was subject to protective orders with the children on September 11, 2020. (Def.'s Mem. [Doc. # 35-1] at 4, 6.) Defendant attached many of these state court documents to his Motion to Dismiss, including detailed allegations by another social worker as to the unsafe conditions in which the minor children were living. (*See, e.g.*, Social Worker Affidavit, Ex. 1 to Mot. to Dismiss [Doc. # 35-2] at 5-9.) Plaintiffs object to their consideration arguing that "for purposes of deciding the motion, the court must rely on the allegations contained on the face of the complaint" except to the extent that a court can consider documents that were integrally relied upon, which these documents are not. (Pls.' Mem. at 1-2.)

When assessing a motion to dismiss, courts may consider "matters of which judicial notice may be taken." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Because the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, crossexamination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998). A court can consider opinions and decisions from other proceedings "on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted . . ., but rather to establish the fact of such litigation and related filings."); *City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1279 (E.D.N.Y. 1995) ("[T]he

order of Judge Greenfield in the state action cannot be recognized as a finding of fact in this federal action. . . [and] cannot be taken as true for the purpose of resolving this action.").

The Court therefore will consider the exhibits submitted by Defendant only for the limited purpose of showing that the proceeding or legal action took place on a particular date, but not to prove the truth of the matters asserted therein. For instance, the Court will judicially notice that the Superior Court ordered on October 10, 2019 that temporary care and custody of the minor children was vested in the Connecticut Department of Child and Family Services, (*See* M.R. Order of Temporary Custody, Ex. 1 to Mot. to Dismiss [Doc. # 35-2] at 2; E.R. Order of Temporary Custody, Ex. 2 to Mot. to Dismiss [Doc. # 35-2] at 15), and that a protective order imposed on Plaintiff Robertstad with regard to the minor children was entered on September 16, 2020, (Order Granting Mot. to Cease Visitation, Ex. 10 to Mot. to Dismiss [Doc. # 35-2] at 48-52). However, the Court will not consider the underlying factual findings and allegations related to these orders, including the affidavit of the social worker who explained her basis for believing that the children were in immediate danger.

### B. Standing as to Plaintiff Robertstad

Article III of the U.S. Constitution limits federal courts' jurisdiction to "cases and controversies." U.S. CONST. ART. III, § 1. The cases and controversies requirement "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). The Supreme Court held that

> The irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (internal quotations, citations, and alterations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

Plaintiff Robertstad did not clearly articulate in his pleadings which constitutionally protected interest he believes Defendant invaded and thus what cognizable injury he suffered. At oral argument, he clarified that he alleges his constitutional right to visitation with the children was invaded. But Plaintiff Robertstad's claim that he was denied visitation is not fairly traceable to the Defendant's alleged conduct of unilaterally removing the minor children from Plaintiff Lester's custody. On October 16, 2019, the Superior Court had granted Plaintiff Robertstad visitation "with both children for [a] minimum of 2 times weekly for [a] minimum of 1 hour each." (Oct. 16 Order, Ex. 3 to Mot. to Dismiss [Doc. # 35-2] at 28.) However, on September 11, 2020, the Superior Court put in place protective orders related to both minor children and Plaintiff Robertstad, which forbade Plaintiff Robertstad from "contact[ing] the protected pe[ople] in any manner, including by written, electronic or telephone contact." (Protective Orders, Ex. 10 to Mot. to Dismiss [Doc. # 35-2] at 51-53.) Thus, Plaintiff Robertstad was precluded from having visitation with the minor children the day after Defendant moved them to an alternative foster care placement on September 10, 2020.[2] Plaintiff Robertstad's inability to visit with the minor children was not the result of Defendant's actions, but the result of the protective orders issued by the state court. Moreover, Plaintiff Robertstad does not allege that his ability to have visitation with the children was contingent on Plaintiff Lester having physical custody of them, nor does the state court order granting him visitation make any such specification, (*see* Oct. 19 Order). Even if Plaintiff Robertstad had been permitted to visit with the minor children at

---

[2] Plaintiffs maintain that the minor children were removed from Plaintiff Lester's home "on or about September 10, 2020," (Compl. ¶ 7), whereas Defendant asserts, without corroboration, that they were removed on September 18, 2020, (Mot. to Dismiss at 6). Since the Court must accept Plaintiffs' allegations as true, it will treat the children as having been removed from the home on September 10, 2020 for the purpose of this motion.

the time of their removal, there is no allegation linking their removal to his inability to subsequently visit with them. Indeed, there were no allegations in the Complaint about visitation whatsoever.

Because Plaintiff Robertstad fails to plead facts making it more likely than not that his constitutional injury – his inability to have visitation with the minor children – was caused by Defendant's conduct, he lacks standing as to this claim, and his constitutional claim is therefore dismissed.

### C. Qualified Immunity

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. To determine whether qualified immunity applies, a court "must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The district court may exercise its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.* at 236.

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" Id. (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, qualified immunity questions must be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Nevertheless, defendants "presenting an immunity defense on a Rule 12(b)(6)

motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Defendants therefore face "a formidable hurdle" in asserting qualified immunity in a motion to dismiss and are "not usually successful." *Chamberlain Estate of Chamberlain v. City of White Plains*, 960 F.3d 100, 111 (2d. Cir. 2020) (internal quotations omitted). Thus, where a plaintiff plausibly alleges that a government official violated his or her clearly established right, a qualified immunity defense cannot succeed at the motion to dismiss stage. *See id.* at 112-113 (denying qualified immunity because the appellant had "plausibly alleged that the officers' warrantless entry into [his] home was not justified by exigent circumstances and was, therefore, a violation of his clearly established rights under the Fourth Amendment"). Dismissal is appropriate only where "the officers' qualified immunity defense is . . . clearly established by [the] allegations." *Id.* at 112.

Plaintiff Lester claimed at oral argument that, as the biological grandmother of E.R. and "psychological grandmother" of M.R., her relationship with the minor children was constitutionally protected and that Defendant invaded that relationship by removing the children from her home. Plaintiff does not point to caselaw supporting a recognized liberty interest in such a relationship, though the Second Circuit has issued several options addressing the related issue of the constitutional rights of kinship foster parents, which the Court finds instructive.

In *Rivera v. Marcus*, a Connecticut foster mother who was also the half-sister of one of the foster children alleged a violation of her due process rights when the foster children were removed from her home. 696 F.2d 1016 (2d Cir. 1982). In affirming the district court's denial of the defendant's motion to dismiss, the Second Circuit found that although foster parents do not typically have a liberty interest in a relationship with their foster children, this situation differed because the plaintiff was "related biologically" to the foster children, "[t]hey lived together as a family for several years *before* the foster care

7

agreement was consummated," and there was little likelihood that either natural parent would ever care for the children again. *Id.* at 1024. In affirming the district court's judgment that the foster mother's due process rights had been violated, the Second Circuit elaborated that the plaintiff "cared for . . . the children almost from birth and continued to function as their 'surrogate mother' after [their biological mother] was institutionalized," emphasizing that the plaintiff "assumed responsibility for [the foster children] well before the foster care agreement was consummated." *Id.* The Second Circuit reiterated the importance of these considerations in *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997), where it affirmed dismissal of a complaint, explaining that an adopted child did not have a constitutionally protected liberty interest in associating with his biological sister because the two had "never lived together" and "did not have the type of ongoing relationship present in *Rivera*."[3] *Id.*

In order for a right to be clearly established, the right cannot be articulated "as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle v. Howards*, 566 U.S. 658, 665 (2012). As such, "existing precedent must . . . place[] the statutory or constitutional question beyond

---

[3] The Second Circuit subsequently affirmed a district court's denial of a motion for judgment on the pleadings on qualified immunity grounds where the plaintiff alleged that the defendant interfered with his relationships with his father, siblings, wife, and children. *Patel v. Searles*, 305 F.3d 130, 136 (2d Cir. 2002). Although it reached this conclusion without analyzing factors like cohabitation, this case does not alter the Court's analysis. First, the Second Circuit explained that "[t]he husband/wife and parent/child relationships are obviously among the most intimate" and deserve "the highest level of constitutional protection." *Id.* Plaintiff Lester does not allege a husband/wife or parent/child relationship that would entitle her to the highest presumption of constitutional protection. Second, the Second Circuit declined to dismiss the case because it was unable to conclude that "the plaintiff can prove no set of facts in support of his claim." *Id.* at 139 (quoting *Conley v. Gibson*, 355 U.S. 41 (1957)). The *Conley* standard no longer applies, and plaintiffs must now make allegations that "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 547. Without any specific allegations characterizing the nature of the relationship between Plaintiff Lester and her biological and psychological grandchildren, she cannot state a claim for a violation of a fundamental right to associate with family members.

debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Plaintiff Lester has not met this burden. While there is some authority in this circuit that a kinship foster parent may have a constitutionally protected liberty interest in his or her relationship with a foster child where the kinship foster parent essentially served as a surrogate parent, there is none indicating that a grandmother who fostered a grandchild, much less a "psychological grandchild," for one year has any such right. The Court therefore concludes that any constitutional right Plaintiff Lester might have to a relationship with the minor children is not clearly established, and her constitutional claim must be dismissed on qualified immunity grounds.

### D. State Law Claims

Having dismissed both Plaintiffs' constitutional claims against Defendant, the Court declines to exercise supplemental jurisdiction over their remaining state law claims of intentional infliction of emotional distress. A district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367. Supplemental jurisdiction is therefore "a matter of discretion, not of right." *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 165 (D. Conn. 2005) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 715-726 (1966)). Where all federal claims are eliminated before trial, "the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED as to Plaintiffs' constitutional claims. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. The Clerk is directed to dismiss the Complaint and close this case.

IT IS SO ORDERED.

___/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 14th day of June 2021.